Arthur JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–86–362–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 5, 1987.

Walter J. Pink, Houston, for appellant.

John B. Holmes, Jr., Roe Morris, Pamela Derbyshire, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Arthur Johnson, appeals from a judgment of conviction for the offense of burglary of a habitation with intent to commit sexual assault, enhanced by one prior felony conviction. The jury rejected appellant's not guilty plea and found him guilty as charged in the indictment. The court found the enhancement count "true" and assessed punishment at confinement for life in the Texas Department of Corrections. We affirm.

Appellant presents four points of error. In his first point, appellant, who is black, claims that the trial court erred by denying his motion to dismiss the petit jury panel, arguing that the State purposefully used peremptory challenges to discriminate by excluding all blacks from the jury in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). His second and third points challenge the validity of a prior New York conviction and the

sufficiency of that conviction to support enhancement. His fourth point is based on an alleged denial of his allocution rights. We affirm.

■ We first address appellant's challenge to the State's use of peremptory strikes to exclude black jurors. Appellant made a timely objection to the petit jury, claiming the State used its peremptory challenges to exclude all blacks from the jury. The court overruled his objection. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that a defendant could establish a *prima facie* case of purposeful discrimination, in violation of the equal protection guarantees of the fourteenth amendment, by showing that the prosecutor used peremptory strikes against members of the defendant's race. *Batson*, 476 U.S. at 95–99, 106 S.Ct. 1722–24. Once the defendant establishes such a *prima facie* case, the burden shifts to the State to furnish a racially neutral explanation for the challenges. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Henry v. State*, 729 S.W.2d 732, 734 (Tex.Crim.App.1987).

In the case before us, the trial court conducted voir dire on April 28, 1986, two days prior to the United States Supreme Court's decision in the *Batson* case. However, *Batson* is to be applied retroactively. *Griffith v. Kentucky*, — U.S. —, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). After reviewing the record, we determined that appellant established a *prima facie* showing of purposeful discrimination under *Batson* since the prosecutor peremptorily struck black venirepersons. Pursuant to Tex.R.App.P. 81(a), we ordered the trial court to conduct a *Batson* hearing to provide the State an opportunity to come forward with an explanation for the strikes and to decide whether purposeful racial discrimination motivated the strikes. *Henry*, 729 S.W.2d at 737: *Keeton v. State*, 724 S.W.2d 58, 65–66 (Tex.Crim.App.1987) (opinion on rehearing on court's own motion, en banc).

*Tompkins v. State*, No. 68, 870 slip op. (Tex.Crim.App. Oct. 7, 1987) clarifies our task in reviewing a trial court's *Batson*

hearing. *Tompkins* states that a trial court conducting a *Batson* hearing has a two-fold role once the accused presents a *prima facie* case of purposeful discrimination. First, the court must evaluate the reasons the State advances for the strikes, to determine whether they are legally sufficient to support a judgment in the State's favor. *Id.* at 7. At a minimum under *Batson*, the prosecutor must do more than merely deny discriminatory motive. *Chambers v. State*, 724 S.W.2d 440, 441 (Tex.App.—Houston [14th Dist.] 1987, no pet.) (citing *Batson*, 476 U.S. at 98, 106 S.Ct. at 1723). Nor may the State rely on an assumption that jurors of the same race as the defendant would be biased. *Id.* However, the explanations need not rise to the level justifying challenges for cause. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. Second, the trial court must weigh the State's reasons to determine whether the accused has established purposeful discrimination by a preponderance of the evidence, an inquiry which is essentially factual. *Tompkins*, slip op. at 7–8. *Tompkins* makes clear that although the burden shifts temporarily to the State on the accused's presenting a *prima facie* case, *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723, the ultimate burden to establish purposeful discrimination rests with the accused. *Tompkins*, slip op. at 8.

The court below conducted the *Batson* hearing on July 20, 1987, entered findings of fact, and concluded that no purposeful racial discrimination motivated the State to use nine of its peremptory strikes against black venirepersons.

According to *Tompkins*, our review of the trial court's findings supporting its conclusions of law is the same given any preponderance of the evidence question. *Tompkins*, slip op. at 8. That is, we view the entire record as supporting the lower court's decision; we may not reverse its factual determinations unless no rational trier of fact could have reached the same determinations by a preponderance of the evidence. *Id.* This standard requires that we give great deference to the lower court as the factfinder since it alone determines the credibility of the prosecutor in advancing plausible reasons for exercising the strikes. *Id.* at 8, 11C n. 6; *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21.

■ The trial court found that the prosecutor used nine of her ten peremptory strikes against blacks but concluded that her reasons were racially neutral and that appellant had failed to establish purposeful racial discrimination in the State's peremptory challenges by a preponderance of the evidence. In support of its conclusions the court entered the following findings concerning each juror struck. The court found that the State struck Venirepersons:

1. Number Eleven because he had a prior conviction for possession of marijuana.

2. Number Thirteen because he was close to appellant's age, unmarried, had moved very recently, and because he was very attentive to appellant's counsel during his voir dire.

3. Number Sixteen because he had never been the victim of a crime, was unattentive to counsel for the State during its voir dire, yet nodded his head in agreement with appellant's counsel during his voir dire and questioned him concerning lesser included offenses.

4. Number Seventeen because she had never been the victim of a crime, did not respond to either individual or row-by-row questions, and seemed to lack intelligence to understand the law in the case as evidenced by the blanks and misspellings on her juror card.

5. Number Twenty–Two because he did not seem to have sufficient ties with the community, was forty-one, almost the same age as appellant, misspelled his religion, indicated date, instead of place, of birth on his juror form and had been at his job only ten months.

6. Number Twenty–Five because he had never been the victim of a crime; was unemployed at age forty-seven, as was his wife; had no children, insufficient ties to the community; and failed to answer all the questions on his juror form.

7. Number Twenty-eight because he had approached the bench in advance of voir dire to inform the court that it would violate his conscience and religious beliefs to sit in judgment against anyone.

8. Number Thirty because he left several blanks on his juror form and inserted his own name in the blank marked "spouse", was unmarried, had no children, was at his job only six weeks although he was thirty-six years old, and did not appear to have sufficient ties with the community.

9. Number Thirty-one because he had approached the bench prior to voir dire to inform the court that he could not be fair because of his economic condition, and stated repeatedly that he would be sympathetic towards criminals.

10. Number Thirty–Five because he had approached the court and stated that personal problems, with his marriage and car, left him uncertain about his ability to be fair.

We fail to find merit in appellant's point of error. The court below properly placed the burden of persuasion on appellant to establish purposeful racial discrimination and properly applied a preponderance of the evidence standard. *Tompkins*, slip op. at 8. The State's reasons are plausible and sufficiently neutral since they concern age, occupation, problems with the law, gestures, as well as religious preference. *Chambers v. State*, 724 S.W.2d 440, 441–42 (Tex.App.—Houston [14th Dist.] 1987, no pet.); *Rodgers v. State*, 725 S.W.2d 477 (Tex.App.—Houston [1st Dist.] 1987, no pet.). Likewise, poor reading and writing ability could create problems in interpreting complex instructions such as the three page charge in the instant case. *Tompkins*, slip op. at 11B. Having found the State's explanations categorically racially neutral, we hold that any rational trier of fact could have likewise failed to find purposeful racial discrimination, by a preponderance of the evidence, in

the State's using nine of its ten peremptory strikes against black venirepersons. Appellant's first point of error is overruled.

In points of error two and three appellant challenges the sufficiency of a prior New York state conviction to support enhancement and the validity of that conviction.

■ We first address appellant's third point of error in which he challenges the validity of the prior conviction for purposes of enhancement. Appellant's point actually raises two challenges to use of the conviction for enhancement. The first is evidentiary: appellant contends the trial court erred in admitting, over objection, State's Exhibit 3A, a penitentiary packet, as evidence of a prior New York felony conviction. He argues the exhibit fails to comply with Tex.Rev.Civ.Stat.Ann. art. 3731a, § 4 (Vernon Supp.1986).[1] He relies on *Scott v. State*, 553 S.W.2d 361 (Tex.Crim.App.1977). Appellant's reliance on *Scott* is misplaced. *Scott* involved a Louisiana penitentiary packet where the general certification failed to refer to the accused's sentences. The certification in the instant case specifically refers to appellant's certificate of commitment. In New York state, a certificate of commitment is statutory authority for issuance of an accused's sentence. N.Y.Crim.Proc.L. § 380.60 (McKinney 1983). As we held in *White v. State*, 681 S.W.2d 731, 734 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd), which involved a Missouri certificate of commitment, appellant's certificate of commitment from New York state performs the same function as the judgment and sentence in Texas for enhancement purposes. Likewise, as was not the case in *Scott*, the first page of appellant's New York penitentiary packet attests to the authenticity of all of the documents contained therein, including appellant's certificates of commitment and parole following confinement.

---

1. By adoption of the Texas Rules of Criminal Evidence, Article 3731a, § 4 was repealed for criminal cases. *See* Act of June 14, 1985, ch. 685 § 9(b), 1985 Tex.Gen.Laws 5136, 5141. However, pursuant to § 9(a) of the repealing legislation, repeal would not be effective *until* promulgation of the Texas Rules of Criminal Evidence, which did not occur until September 1, 1986. We must address the merits of appellant's Article 3731a, § 4 argument because he was sentenced on May 2, 1986, while the statute was still in effect.

We hold State's Exhibit 3A shows compliance with Article 3731a, § 4 on its face: the inmate records supervisor of the Clinton County, New York Correctional Facility, the presiding judge of the Clinton Supreme and County Court, as well as the deputy clerk of that court all attested to the authenticity of the documents contained in the pen packet. Because the State complied with Article 3731a, § 4 as a matter of law, the trial court properly overruled appellant's objection to the admissibility of State's Exhibit 3A. *Bollman v. State,* 629 S.W.2d 54, 55–56 (Tex.Crim.App. [Panel Op.] 1982); *White,* 681 S.W.2d at 734.

■ Germane to appellant's third point of error is a second argument which contests the validity of the prior conviction for enhancement purposes. This argument constitutes a collateral attack for which appellant bears the burden of proof. *West v. State,* 720 S.W.2d 511, 519 (Tex.Crim. App.1986) (en banc); *Acosta v. State,* 650 S.W.2d 827, 829 (Tex.Crim.App.1983) (en banc); *Humphrey v. State,* 681 S.W.2d 223, 224 (Tex.App.—Houston [14th Dist.] 1984, no pet.). Specifically, appellant must show that his prior conviction was invalid under New York law. *Humphrey,* 681 S.W.2d at 224. Appellant has not met his burden. The certificate of commitment in State's Exhibit 3A reflects sentencing for a Class A Felony and was signed by the clerk of the court for New York County, New York. Contrary to appellant's contention that the signature of a justice is required, a clerk's signing the certificate of commitment will not invalidate it under New York law. *People ex rel. O'Hara v. Marsden,* 201 Misc. 182, 187–88, 103 N.Y.S.2d 907, 912–13 (N.Y.Sup.Ct.1950). Moreover, a certificate of commitment will suffice as evidence of a prior ("predicate") felony conviction in New York state. *See* N.Y.Penal Law § 70.06 (McKinney 1975); *People v. Seppinni,* 119 Misc.2d 125, 130, 462 N.Y.S. 2d 956, 960 (N.Y.Sup.Ct.1983). Similarly, appellant's having received an indeterminate sentence in New York on November 28, 1972, will not render the sentence invalid for purposes of Texas enhancement since New York requires indeterminate sentencing for all felonies. N.Y.Penal Law § 70.00(1)–(3) (McKinney 1975). Texas's having abolished indeterminate sentencing does not aid appellant in meeting his burden to prove the prior New York conviction invalid.

Having found that the trial court properly overruled appellant's objection based on Tex.Rev.Civ.Stat.Ann. art. 3731a, § 4 (Vernon Supp.1987), and that appellant failed to meet his burden in challenging the validity of his prior New York conviction, we overrule his third point of error.

■ Appellant's second point of error questions the sufficiency of State's Exhibit 3A to support enhancement in the instant case. Since the exhibit contains a certificate of commitment showing that appellant was sentenced to the penitentiary on November 28, 1972 in New York, it established his prior felony conviction as a matter of law. Tex.Penal Code § 12.41(1) (Vernon 1974); *Ex parte Blume,* 618 S.W.2d 373 (Tex.Crim.App.1981) (en banc); *Betancourt v. State,* 590 S.W.2d 487 (Tex.Crim. App. [Panel Op.] 1979), *cert. denied,* 446 U.S. 942, 100 S.Ct. 2166, 64 L.Ed.2d 796 (1980); *see also,* Tex.Penal Code § 1.07(a)(14) (Vernon 1974) ("felony" defined). We hold State's Exhibit 3A sufficient to support enhancement pursuant to Tex.Penal Code § 12.42 (Vernon 1974 & Supp.1987). Appellant's second point of error is overruled.

■ Appellant next complains that the court failed to inquire whether he had anything to say prior to pronouncement of sentence in violation of his right of allocution, Tex.Code Crim.Proc.Ann. art. 42.07(2) (Vernon Supp.1987) and *Green v. United States,* 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed. 2d 670 (1961). He argues that the trial court's failure to comply with Article 42.-07(2) is reversible error because record evidence shows that he was once diagnosed as a mentally disordered sex offender while in a California correctional facility. We disagree.

At trial, appellant failed to object to the trial court's omitting allocution right questioning and failed to urge the alleged issue of his competency to stand trial. Since he

failed to object, and since there is nothing in the record to show that appellant was either silenced or would have raised the competency issue, we overrule his point of error. *Tenon v. State*, 563 S.W.2d 622 (Tex.Crim.App. [Panel Op.] 1978); *Hernandez v. State*, 628 S.W.2d 145, 147 (Tex.App.—Beaumont 1982, no pet.). *See also, Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (in absence of aggravating circumstances, mere failure to ask an accused whether he has anything to say prior to sentencing is not a fundamental defect).

The judgment of the trial court is affirmed.