**George Toby CASAREZ, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–91–401–CR.**

Court of Appeals of Texas, Fort Worth.

June 30, 1993.

 

 

 
 
 
 
 
 
 
 
 
 
 
 
 
 

 
 

 
 
 
 
 
 

 
 
 
 
 
 
 
 
 
 
 
 
 

 

782

William S. Harris, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., David Curl, Asst. Criminal Dist. Atty., Fort Worth, for state.

## OPINION

WEAVER, Justice.

George Toby Casarez was convicted by a jury of aggravated sexual assault of a child. *See* TEX.PENAL CODE ANN. §§ 22.011, 22.021 (Vernon 1989). The jury assessed punishment at twelve years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant brings ten points of error on appeal. We affirm.

By his first point of error, appellant attacks the State's peremptory strikes of two venirepersons. Appellant claims that such strikes violated the equal protection clause of the Fourteenth Amendment to the United States Constitution because they were made by the State on the basis of the venirepersons' religious faith, namely their membership in the Pentecostal faith.

This attack springs from occurrences in the trial following appellant's *Batson*[1] objection. The two jury panel members here in question are black. At the *Batson* hearing the prosecutor gave racially neutral explanations for striking these two venirepersons. Among the reasons given for striking one member was that she had a brother currently in the Texas penitentiary, she was a postal clerk and she expressed discomfort with the law as it regards sexual assault of a child. Among the reasons given for striking the other member was that his brother had been arrested, he incorrectly completed his juror questionnaire, and the questioning during voir dire left the prosecutor with the impression that he was somewhat slow. The prosecutor also cited as a reason for striking each of the two members that they were Pentecostals. The prosecutor explained that in his experience, Pentecostals often have difficulty assessing punishment. The appellant offered no rebuttal evidence. Following the close of the prosecutor's testimony, the appellant's attorney raised the following objection: "I object to the exclusion by the State on peremptory grounds of both Ms. Burton and Mr. Gee because this decision is based in part on an impermissible reason, and that is their membership in the Pentecostal faith." Appellant's attorney then argued to the trial court that the Equal Protection Clause of the fourteenth amendment prohibits discrimination on the basis of race or religion, and the reason espoused by the prosecutor constitutes a violation of that amendment. The appellant argued that the State used an impermissible reason for

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

striking these venirepersons, their religious faith. Based on that argument he asked the trial court to disqualify the panel and call another one.

The trial court simply denied the *Batson* challenge without making any reference to appellant's impermissible religious faith objections. The appellant does not attack the trial court's *Batson* ruling on this appeal. Instead, appellant limits his position under point of error one to the argument that the prosecutor's religious explanation was in and of itself an impermissible reason for exercising the peremptory strikes. Apparently, the appellant would have us apply an expanded version of *Batson* so as to hold that the religious explanation in this case tainted the jury panel without regards to racial considerations.

▮ Traditional equal protection analysis is not appropriate when applied to peremptory challenges. The *Batson* decision itself did not apply traditional equal protection analysis; instead, *Batson* was based on a hybrid form of equal protection because its application was limited "to allegations of impermissible challenge *on the basis of race*". *Batson*, 476 U.S. at 123, 106 S.Ct. at 1737 (Burger, C.J., dissenting) (emphasis in original). *See also Perry v. State*, 770 S.W.2d 950, 951–52 (Tex.App.—Fort Worth 1989, no pet.). As Chief Justice Burger noted, "if conventional equal protection principles apply, then presumably defendants could object to exclusions on the basis of not only race, but also sex, age, *religious* or political affiliation, mental capacity, number of children, living arrangements, and employment in a particular industry or profession." *Batson*, 476 U.S. at 124, 106 S.Ct. at 1737 (citations omitted) (emphasis added). According to the Chief Justice, "it is quite probable that every peremptory challenge could be objected to on the basis that, because it excluded a

vireman who had some characteristic not shared by the remaining members of the venire, it constituted a 'classification' subject to equal protection scrutiny." *Id.* 476 U.S. at 124, at 1738.[2] The proposition here urged by appellant would, in effect, seriously limit or perhaps do away with peremptory challenges altogether. This we decline to do. The United States Supreme Court refused to do so in the *Batson* case despite Justice Marshall's urging that peremptory challenges be eliminated. *Batson*, 476 U.S. at 101–08, 106 S.Ct. at 1726–29 (Marshall, J., concurring). Instead, the *Batson* majority recognized the importance of the peremptory challenge and sought to harmonize the conflict between peremptory challenges for which no reason must be stated and its new rule by limiting *Batson's* holding to instances of peremptory challenges based upon race alone. *See id.* 476 U.S. at 96, 106 S.Ct. at 1723.

Subsequent United States Supreme Court cases have also limited *Batson's* equal protection safeguards to instances of racial discrimination. *See Georgia v. McCollum*, —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Hernandez v. New York*, —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Justice Powell, the author of the majority opinion in the *Batson* case, has explained that "[o]ur decision in *Batson* ... was justified by the compelling need to remove all vestiges of invidious racial discrimination in the selection of jurors, ..." *Gray v. Mississippi*, 481 U.S. 648, 672, 107 S.Ct. 2045, 2059, 95 L.Ed.2d 622, 642 (1987). Relying upon the "unique history of racial discrimination in this country," Justice O'Connor has also interpreted *Batson* narrowly. *See Brown v. North Carolina*, 479 U.S. 940, 941, 107 S.Ct. 423, 423–24, 93

---

**2.** The *Batson* Court did not engage in the traditional equal protection analytical procedure of applying a strict scrutiny test to classifications based upon race to determine whether such classifications were suitably tailored to serve a compelling state interest. *Batson*, 476 U.S. at 124–25, 106 S.Ct. at 1738. The Chief Justice noted that it would be difficult to apply conventional equal protection analysis to claims of

discriminatory peremptory challenges because some claims would be reviewed under the strict scrutiny test, while others would be reviewed under the intermediate test to determine if they were substantially related to a sufficiently important governmental interest or the rational basis test to determine whether they were a rational means to a legitimate end. *Id.*

L.Ed.2d 373, 374 (1986) (O'Connor, J., concurring in the denial of certiorari). Justice O'Connor explains that "*Batson* does not touch, indeed, it clearly reaffirms the ordinary rule that a prosecutor may exercise his peremptory strikes for any reason at all. *Batson*, in my view, depends upon this Nation's profound commitment to the ideal of racial equality, ..." *Id.*[3] (citation omitted).

As mentioned above, appellant does not attack the sufficiency of the State's racially neutral explanations on this appeal, and we are not asked to review the sufficiency of any of the explanations given, including whether any group bias explanation was proper with respect to the two Pentecostals who were struck from the panel. However, we observe that when religious affiliation has been challenged as a pretext to racial discrimination, the courts of our state have repeatedly held religious beliefs to be racially neutral reasons for striking potential jurors. *See Earhart v. State*, 823 S.W.2d 607, 624–25 (Tex.Crim.App.1991), vacated on other grounds, '— U.S. —, 113 S.Ct. 3026, 125 L.Ed.2d 715 (1993); *Gerber v. State*, 845 S.W.2d 460, 465 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd); *Dixon v. State*, 828 S.W.2d 42, 45–46 (Tex. App.—Tyler 1991, pet. ref'd); *Salazar v. State*, 745 S.W.2d 385, 389 (Tex.App.—Fort Worth 1987), *rev'd on other grounds*, 795 S.W.2d 187 (Tex.Crim.App.1990); *Johnson v. State*, 740 S.W.2d 868, 871 (Tex.App.— Houston [14th Dist.] 1987, pet. ref'd, untimely filed). *See also United States v. De La Rosa*, 911 F.2d 985, 990–91 (5th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). In those cases, the influence of a person's religious beliefs upon his or her ability to assess punishment was found to be related to the purpose of the trial, and thus, a racially neutral reason for striking the potential juror. *See id.* We believe those cases lend support to our holding in this case.

■ Because we do not find any authority supporting the extension of the *Batson* holding beyond the boundaries of racial discrimination, and because the United States Supreme Court has repeatedly and consistently limited the holding of *Batson* and its progeny to race, we decline to apply an expanded version of *Batson* to peremptory challenges made on the basis of a venireperson's religious affiliation.[4] Point of error one is overruled.

Points of error two through seven complain of two statements by the prosecutor allegedly commenting on the appellant's failure to testify at either the guilt/innocence or punishment phases of the trial. Points of error two, three, and four complain of a comment made during the closing argument of the guilt/innocence stage of trial. Points of error five, six, and seven complain of an objection made during the punishment hearing.

■ The failure of an accused to testify may not be the subject of comment by the prosecution. *Montoya v. State*, 744 S.W.2d 15, 34 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). Such comment is in violation of the privilege against self-incrimination contained in article I, section 10 of the Texas Constitution and the express provisions of article 38.08 of the Texas Code of Criminal Procedure. In addition to violating the constitution and laws of Texas, a comment on the defendant's failure to testify constitutes a violation of the Fifth Amendment to the United States Constitution, which is made applicable to the states by the fourteenth amendment. *Griffin v. California,*

---

**3.** Justice Brennan interprets *Batson* more broadly, however. According to Justice Brennan, "[t]he State misses the wider significance of *Batson*: that the broad discretion afforded prosecutors in the exercise of peremptory challenges may not be abused to accomplish any unconstitutional end." *Brown v. North Carolina,* 479 U.S. 940, 944–45, 107 S.Ct. 423, 426, 93 L.Ed.2d 373, 375 (1986) (Brennan, J., dissenting in the denial of certiorari).

**4.** We agree with appellant that the equal protection clause would apply to cases in which persons were systematically excluded from petit jury service on the basis of their religious affiliation. *See Juarez v. State,* 102 Tex.Crim. 297, 277 S.W. 1091 (1925) (equal protection applies to systematic exclusion of Catholics from grand jury service). This appeal fails to raise the issue of such systematic discrimination, however.

380 U.S. 609, 611, 85 S.Ct. 1229, 1231, 14 L.Ed.2d 106, 108 (1965); *Montoya,* 744 S.W.2d at 34.

Appellant's accomplice, Joe Mendoza, testified against appellant during the guilt/innocence phase of the trial. Appellant did not testify. In the State's closing argument at the guilt stage, the following occurred:

> [PROSECUTOR]: Do you like Joe? [Appellant's attorney] asked you if you liked Joe. I trust that you don't. But do you want to give Toby the benefit of your loathing of Joe? You know a lot more about Joe than you do Toby. Don't give Toby an unfair advantage—
>
> [APPELLANT'S ATTORNEY]: Your Honor, I object to counsel's comment as a comment on the failure of the Defendant to testify.
>
> THE COURT: Overruled.

Appellant argues in his brief that this complained-of remark was an indirect comment on the defendant's failure to testify. According to appellant's argument, the only way the jury could interpret the comment that they knew more about Joe than they did about appellant was that Joe had testified while appellant had not. The State characterizes the remark as an appropriate response to an attack on the credibility of a State's witness.

■ In order for an indirect comment to violate the right against self-incrimination, the offending language, when viewed from the jury's standpoint, must be manifestly intended or be of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *Montoya,* 744 S.W.2d at 35; *Banks v. State,* 643 S.W.2d 129, 134 (Tex.Crim.App.1982), *cert. denied,* 464 U.S. 904, 104 S.Ct. 259, 78 L.Ed.2d 244 (1983). It is not sufficient that the language might be construed as an implied or indirect allusion to the defendant's failure to testify; it must necessarily refer to the accused's failure to testify. *Montoya,* 744 S.W.2d at 35. For an indirect comment to constitute reversible error, it must call for a denial of an assertion of fact or contradictory evidence that only the defendant is in a posi-

tion to offer. *Id.; Short v. State,* 671 S.W.2d 888, 890 (Tex.Crim.App.1984). On the other hand, language that can reasonably be construed to refer to a failure to present evidence other than from the accused's own testimony does not amount to a comment on the failure to testify. *Swallow v. State,* 829 S.W.2d 223, 225 (Tex. Crim.App.1992).

■ When viewed from the jury's standpoint, the comment under attack in points of error two, three, and four does not meet the test to qualify as a comment on the appellant's failure to testify. The appellant's attorney attacked Joe Mendoza's credibility during jury argument at the guilt/innocence stage. In response, the State asked the jury to avoid transferring their dislike of Mendoza, a State witness, to the State. Under these circumstances, the comment was not manifestly intended as a comment on appellant's failure to testify, or of a character that the jury would necessarily and naturally take it as such comment. Points of error two, three, and four are overruled.

During the punishment phase of the trial, the prosecutor argued in her opening statement that probation was equivalent to no punishment at all. During the appellant's argument, the following exchange occurred:

> [APPELLANT'S ATTORNEY]: I don't think, frequently, much consideration is given to how this whole situation that we've come to thus far affects a person who has gone through a trial. Now, please don't misunderstand what I'm about to say. I'm not suggesting that a person found guilty of the offense that you have convicted Mr. Casarez of shouldn't go through a trial, but I do ask you to recognize, first off, that just to this point, Mr. Casarez has certainly learned an object lesson, whatever happens.
>
> [PROSECUTOR]: Excuse me. I have an objection. Your Honor, I object to this line of argument. It deprives the State of the right to cross-examine his client, and we strenuously object. He's trying to put out matters of evidence.

THE COURT: Overruled.

[PROSECUTOR]: The second objection, he's trying to put matters in evidence which are not in evidence. It's outside the record.

THE COURT: Overruled.

[APPELLANT'S ATTORNEY]: Your Honor, I object to that comment of counsel because he has just made a comment on the failure of Mr. Casarez to testify.

THE COURT: Overruled.

No instruction to disregard was requested.

Appellant characterizes the State's remark as a direct comment on appellant's failure to testify. The State responds that its comment was invited by appellant's jury argument.

■ The State may answer jury argument made by opposing counsel even when such response requires the prosecutor to comment on the defendant's failure to testify. *Long v. State*, 823 S.W.2d 259, 269 (Tex.Crim.App.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Clarke v. State*, 785 S.W.2d 860, 870 (Tex.App.—Fort Worth 1990), *aff'd*, 811 S.W.2d 99 (Tex.Crim.App.1991). When the appellant's attorney offers evidence during jury argument that only the appellant could provide, the State may properly respond with comments that infringe appellant's right against self-incrimination. *Long*, 823 S.W.2d at 269 (appellant's attorney argued that attorney did not know what appellant's state of mind was at time of commission of crime); *Hall v. State*, 492 S.W.2d 512, 513 (Tex.Crim.App.1973) (appellant's attorney argued that appellant denied being present at scene of crime when record contained no evidence of any admissions by appellant). In the case before us, appellant's attorney argued that appellant had "learned an object lesson." The record contains no evidence supporting that statement. Moreover, only appellant could testify as to any lesson that he may have learned. Therefore, the State's contested statement was invited by the appellant's jury argument and does not constitute error. Furthermore, even if the State's objection could be construed as an uninvited comment, we find any error respecting the same to be harmless under the circumstances of this case, and particularly because the appellant did not request that the jury be instructed to disregard the prosecutor's comment of which he herein complains. *See Long*, 823 S.W.2d at 269–70. Points of error five, six, and seven are overruled.

■ Point of error eight asserts that the trial court erred in denying appellant's requested jury instruction on mistake of fact. Appellant claims that he reasonably formed a belief that the complainant had consented to the sexual conduct. Appellant asserts that his written statement, which was admitted into evidence, raised the mistake of fact defense on the consent issue. *See Woodfox v. State*, 779 S.W.2d 434, 435 (Tex.Crim.App.1989).

The complainant was fourteen years old at the time of the sexual assault. Lack of consent is not an element of the offense of aggravated sexual assault of a child. TEX.PENAL CODE ANN. § 22.021(a)(1)(B) (Vernon 1989); *Fancher v. State*, 659 S.W.2d 836, 838 (Tex.Crim.App.1983). Nevertheless, the indictment and jury charge in this case both included consent as an essential element of the crime, and thus increased the burden of factual proof on the State. *Fancher*, 659 S.W.2d at 838.

When the court's charge requires the jury to find that the assaultive acts of sexual conduct were without the complainant's consent, an affirmative submission of the issue of mistake of fact as to consent is neither required nor proper. *Drakes v. State*, 505 S.W.2d 892, 894 (Tex.Crim.App. 1974); *Leger v. State*, 688 S.W.2d 130, 132–33 (Tex.App.—Beaumont 1985, no pet.); *Mills v. State*, 626 S.W.2d 583, 585 (Tex. App.—Amarillo 1981, pet. ref'd). Therefore, the trial court did not err by refusing to submit appellant's requested jury instruction. Point of error eight is overruled.

Point of error nine asserts that the trial court erred by overruling appellant's objection that the State was striking at the appellant over the shoulder of his counsel. The statement of which appellant com-

plains was made in the form of an objection to the appellant's closing argument at the guilt/innocence stage of trial:

[APPELLANT'S ATTORNEY]: Let's talk briefly and finally about Count Two.

[The prosecutor]'s going to tell you that mistake of fact doesn't apply ... It's not in the Charge. The Judge has given you the law. You needn't worry about it. But the Judge tells you and the law tells you that Mr. Casarez to be guilty, must have acted intentionally or knowingly, and those terms are defined.

You're here to do justice. You determine whether or not your verdict is just under the facts and the evidence.

[PROSECUTOR]: Your Honor, I object insofar as he's asking the jury to disobey their oath to follow the law and instead substitute their own notions of what justice is.

[APPELLANT'S ATTORNEY]: Your Honor, I object—

THE COURT: Overruled.

[APPELLANT'S ATTORNEY]: And I object because I made no such suggestion and I will make no such suggestion.

THE COURT: The objection has been overruled [appellant's attorney].

[APPELLANT'S ATTORNEY]: Your Honor, I object to counsel striking at the Defendant over the shoulder of his counsel by suggesting that I have made an improper suggestion to this jury.

THE COURT: Well, it's overruled.

■ Proper jury argument falls within one of four distinct categories: (1) summary of the evidence; (2) reasonable deduction from the evidence; (3) in response to argument of opposing counsel; and (4) plea for law enforcement. *Long v. State,* 823 S.W.2d at 267; *Bonner v. State,* 820 S.W.2d 25, 27 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). If the argument complained of does not fit into one of these four categories, the improper argument will not constitute reversible error unless, in light of the record as a whole, the argument is extreme, manifestly improper, injects new and harmful facts into the case or violates a mandatory statutory provision and is thus so inflammatory that its preju-

dicial effect cannot reasonably be cured by judicial instruction to disregard the argument. *Long,* 823 S.W.2d at 267; *Bonner,* 820 S.W.2d at 28.

■ The State's objection falls into the category of responding to the argument of opposing counsel. Furthermore, the statement did not meet any of the criteria of harmful jury argument. Point of error nine is overruled.

Point of error ten alleges that the trial court erred by overruling the appellant's objection to the State's argument inviting the jury to speculate on extrinsic offenses. The evidence established that after the complainant escaped from appellant and his accomplice, the two men drove around the neighborhood looking for her. During argument at the punishment phase of trial, the prosecutor made the following comment:

Perhaps, lastly, folks, exercise some reasonable deductions from the evidence that you've heard. Now, what if Toby and Joe had caught back up with [the complainant]? You heard about what amounts to a night of terror, and I am not going to try to be dramatic about it. You heard the evidence. You know what happened to her. You heard about how she's further had nightmares, but concern yourselves, deduce from the evidence what would have happened if they had caught her, what more violations would have occurred to her. What more terror and what more might they have done to make sure she didn't come back to see you.

[APPELLANT'S ATTORNEY]: Your Honor, I'm going to object to counsel's asking this jury to speculate on events that did not happen and punish for events that did not happen.

THE COURT: Overruled.

■ As an exception to the general rule, evidence of extraneous offenses may be admissible to show the context in which the criminal act occurred. *Wilkerson v. State,* 736 S.W.2d 656, 659–60 (Tex.Crim. App.1987). The reasoning giving rise to this exception provides that the jury is enti-

tled to know all the relevant facts and circumstances surrounding the charged offense because "an offense is not tried in a vacuum." *Moreno v. State,* 721 S.W.2d 295, 301 (Tex.Crim.App.1986). That reasoning further provides that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of the act so that they may realistically evaluate the evidence. *Wilkerson,* 736 S.W.2d at 660 (*quoting Rios v. State,* 557 S.W.2d 87 (Tex.Crim.App.1977)).

While the State has wide latitude to draw reasonable inferences from the evidence, *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App.1988), the State may not simply point out the existence of a collateral offense and thereby request additional punishment for that collateral offense. *Lomas v. State,* 707 S.W.2d 566, 569 (Tex.Crim.App.1986). Instead, under the doctrine of res gestae, the prosecution is entitled to elicit testimony on the facts and circumstances surrounding the commission of the offense and may then ask the jury to consider how these facts and circumstances serve as aggravating or mitigating factors in determining the severity of the punishment to be assessed for the offense charged. *Wilkerson v. State,* 736 S.W.2d at 659–661; *Winkfield v. State,* 792 S.W.2d 727, 730 (Tex.App.—Corpus Christi 1990, pet. ref'd). In order for such argument to constitute reversible error, the prosecutor must go beyond the bounds of asking the jury to consider the circumstances surrounding the charged offense in fixing punishment. *Lomas,* 707 S.W.2d at 570; *Rushing v. State,* 813 S.W.2d 646, 650 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). A comment allegedly referring to an extrinsic offense is not objectionable absent a specific request to punish for that extrinsic offense. *See Ellis v. State,* 726 S.W.2d 39, 47 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987).

Appellant argues that there was no direct evidence that appellant and his accomplice tried to find the complainant after the assault with the intent to harm her. Appellant's attorney argued at the close of the guilt/innocence phase of trial that appellant's later pursuit of complainant was inconsistent with guilt. The record contains evidence supporting the opposite conclusion, however. The complainant testified that the two men had threatened to kill her that night, and that Joe Mendoza had threatened her with a knife. Mendoza testified that while the two men drove through the neighborhood looking for the complainant, appellant threw the complainant's clothes out of the car. This conduct aggravates the seriousness of the offense charged because it suggests that appellant had no remorse for his crime and was aware of his own culpability. Therefore, it was reasonable for the State to infer from the evidence that the two men intended to inflict harm upon the complainant had they found her and such jury argument was proper in order to establish the context in which the crime was committed. Moreover, the State did not ask for additional punishment in its argument mentioning appellant's search for the complainant; instead, the State invited the jury to consider the facts and circumstances surrounding the sexual assault. Thus, the State's comment did not constitute error. Point of error ten is overruled.

The judgment of the trial court is affirmed.

HOPKINS, Justice, concurring.

I concur in the results reached by the majority.

In *Hill v. State,* 827 S.W.2d 860 (Tex. Crim.App.1992), the majority opinion contained the following: "[R]ace may be a factor coexisting with nonracial reason for a strike, however, race may not be *the* reason for the strike." *Id.* at 866 (emphasis added). "[A]ppellant must show that the prosecutor's other explanations for his challenge were merely a pretext for discrimination." *Id.* at 869.

Texas has not adopted the so-called "bright line" rule suggested in Judge Baird's concurring opinion in *Hill. Id.* at 875 (Baird, J., concurring).

Applying the rationale set forth by the majority in *Hill,* should the *Batson* prohibition against racial discrimination in the exercise of peremptory challenges later be extended to include prohibition against religious discrimination, as suggested by Chief Justice Hill in the dissenting opinion, I would follow *Hill, supra,* and hold that religious beliefs or affiliation as reasons for strikes may co-exist with nonreligious and nonracial reasons in the exercise of strikes. In the present case, the State, in my view, enunciated sufficient nonracial and nonreligious reasons for the exercise of the State's strikes of the two black, Pentecostal venirepersons, including the fact that one's brother was currently incarcerated and the venireperson expressed discomfort with the law applicable to the offenses charged, *i.e.,* aggravated sexual assault and sexual assault of a child. The appellant did not show that these explanations were merely a pretext for discrimination.

It should be noted that one of the venirepersons struck appeared as number thirty-three on the list, and that the twelve jurors were obtained from the first thirty-two venirepersons. Although the prosecutor gave similar nonracial and nonreligious reasons for striking number thirty-three, none were required because striking number thirty-three did not have an impact on the composition of the jury since the jurors were obtained from the first thirty-two members of the venire panel, nor did it deprive venireperson number thirty-three the privilege of service on the jury. *See Gambel v. State,* 835 S.W.2d 788, 791 (Tex. App.—Houston [14th Dist.] 1992, no pet.); *Rodriguez v. State,* 832 S.W.2d 727, 729 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *Henderson v. State,* 816 S.W.2d 845, 848 (Tex.App.—Fort Worth 1991, no pet.).

With these comments, I concur in the results reached by the majority.

Joined by LATTIMORE, J.

HILL, Chief Justice, dissenting.

I respectfully dissent, because the peremptory challenge of a citizen from jury service due to the citizen's religion violates that citizen's right to equal protection under the Fourteenth Amendment to the United States Constitution; and a criminal defendant, whether or not a follower of that religion, has standing to invoke that right on behalf of that juror. I would further hold that where a prosecutor states that religion was one of the reasons for a strike and also states a religion-neutral reason for the strike that is supported by the record, the strike must still fail because it was in part based upon religion.

There is no question that the *Batson* rule applies to the use of a peremptory challenge based on race. See *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The major issue here is whether the rule also applies to religion.

The majority does not argue with the premise that ordinary equal protection analysis would lead to the conclusion that the exclusion of a juror on the basis of that juror's religion would be a violation of that juror's right of equal protection. Yet, despite the fact that the Supreme Court in *Batson* stated that its ruling as to race was based upon the Equal Protection Clause, *id.* at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 82, the majority indicates that it will not use equal protection analysis in determining whether that ruling should be applied to religion as well as race.

Nothing in the Supreme Court's opinion in *Batson* indicates that it has any intention of limiting the general principles at work solely to racial cases. The opinion is limited to race because that is the issue that was before the court. The majority derives its limitation from a dissenting opinion, that of Chief Justice Warren Burger. *See id.* at 112, 106 S.Ct. at 1731, 90 L.Ed.2d at 97. Justice Burger urged that the peremptory challenge would be eliminated if ordinary equal protection analysis were to be employed. *Id.* at 127, 106 S.Ct. at 1739, 90 L.Ed.2d at 108. His views were not part of the court's opinion in *Batson.*

Even if we were to accept the views of Justice Burger that we are not to use conventional equal protection analysis in determining this issue, we must examine the factors that the *Batson* court used in reaching the decision that racial discrimination in the exercise of the peremptory strike was constitutionally prohibited, so as to determine what analysis we are to use.

In examining the opinion in *Batson*, we find that the following factors were determinative:

1. The exclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure—the State may not exercise its peremptory challenges in contravention of the Equal Protection Clause.

2. Purposeful racial discrimination in jury selection violates a defendant's right to a representative jury.

3. Racial discrimination in jury selection undermines public confidence in the fairness of our system of justice.

4. There must be protection against State action through its administrative officials in effecting the prohibited discrimination.

5. The peremptory challenge may be and has been used to discriminate against African–American jurors.

*Id.* at 85–88, 106 S.Ct. at 1716–18, 90 L.Ed.2d at 80–82.

As we examine those factors, we must note that every one is as equally applicable to religious discrimination in jury selection practices as it is to racial discrimination. Religious discrimination would be a primary example of a practice that the First Amendment, applied to the states by virtue of the Fourteenth Amendment, was designed to cure. Religious discrimination in jury selection violates the defendant's right to a representative jury. Religious discrimination in jury selection is unfair and will undermine public confidence in the fairness of our system of justice. Veniremembers must have protection against State action in effecting discrimination based upon their religion. Since this is not the first case that we have had where prosecutors have acknowledged exercising peremptory strikes against jurors because of their religion, we know that peremptory strikes are being exercised against our citizens based upon their religion. Because the factors utilized in *Batson* are as applicable to religion as to race, I would hold that the Equal Protection Clause also prohibits religious discrimination in the exercise of peremptory strikes.

The only possible basis for holding to the contrary is the belief that the United States Supreme Court intends to limit its holding in *Batson* to racial discrimination in order to preserve the peremptory challenge. The only reason that the Court might have for prohibiting one form of discrimination while allowing other types of discrimination would be that the history of racial discrimination in our country is so historically important, and its potential for social unrest is so great, if not held in check, that its correction outweighs the utility of the peremptory challenge.

As is the case with racial discrimination, religious discrimination is of great historical importance both in this country and in the world. Many of the founders of this nation came here to avoid religious persecution. Such persecution and discrimination continued in some of the colonies until the practice was outlawed by the Constitution. Today, headlines almost daily tell of some ghastly act carried out in the name of religion against those of other faiths. In our own country, the Ku Klux Klan has crusaded against those of the Jewish faith and those of the Roman Catholic faith, as well as against African–Americans and other racial groups.

This country may be the most religious and most religiously diverse in the world. Given the historic human tendency to be intolerant with respect to religion, and given the great diversity of the religious faiths of our citizens, and the importance that our citizens place on religious faith, I would suggest that discrimination in jury selection on the basis of religion is as repugnant to our ideals and has the potential to be as socially disruptive as racial discrimination if it is allowed to continue. Therefore, I would hold that the principles stated in *Batson* with respect to racial discrimination in the exercise of peremptory challenges are equally applicable to religious discrimination in the exercise of peremptory challenges.

The State argues that even if *Batson* applies to religious discrimination in the exercise of peremptory strikes, the trial court did not err in allowing it in this case

because the prosecutor had other, nonreligion based reasons that would justify such a strike. It relies on the case of *Hill v. State*, 827 S.W.2d 860 (Tex.Crim.App.1992).

In *Hill*, the majority concluded that a *Batson* objection was well taken because the prosecutor's nonracial explanation for his strike was not supported by the record, and therefore was merely a pretext for discrimination. *Id.* at 870. In what I consider to be dicta, the majority indicated that the mention of a racial reason by the prosecutor was not conclusive in that the appellant was required to show that any nonracial reasons were merely a pretext for discrimination. *Id.* I would conclude, along with the concurring opinion in *Hill*, that the United States Constitution does not permit race as a factor in the State's exercise of a peremptory strike, *see id.* at 873, so that if race were included as a reason, the prosecutor's stated reasons for peremptory strikes are not race-neutral. Assuming that the same rule would apply as to religion, in this case the prosecutor's stated reasons for peremptory strikes are not religion-neutral.

I believe that the majority would concede that if the principles outlined in *Batson* are applicable to peremptory strikes based upon religion, the appellant has the standing to object to strikes based upon the religion of the veniremember whether or not the appellant is a member of that religion. *See Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

Based upon the principles stated in this opinion, I would sustain the appellant's point of error number one, reverse the judgment, and remand this cause for trial.

Joined by HICKS, J.