Opinion filed December 22, 2016



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00340-CR

_____

## ALFONSO ALONZO RODRIGUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR42299**

## M E M O R A N D U M   O P I N I O N

The jury convicted Alfonso Alonzo Rodriguez of murder and assessed his punishment at confinement for ninety-nine years in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine. In four issues on appeal, Appellant contends that (1) the State's closing arguments were improper because they vouched for the strength of the State's case; (2) the State's closing arguments were improper because they stated information about facts not in evidence; (3) the State's closing arguments were improper because they were inflammatory; and

(4) the trial court erred in allowing testimony concerning Appellant's statements. We affirm.

*Background Facts*

On September 21, 2013, Appellant lived on Atlanta Street in Midland. The victim, Ildefonso Galindo, lived across the street. On the evening of September 21, the victim, his cousin Erbey Galindo, and his friend Jose Manuel Mora went to a bar. The three men played pool and drank alcohol. Throughout the evening, the victim and Appellant exchanged text messages. Appellant had previously given the victim cocaine and was demanding that the victim repay him, either in-kind or with money. Appellant attempted to induce the victim to return home. The text messages between Appellant and the victim became increasingly heated. Appellant sent the victim text messages falsely claiming that he had burglarized and set fire to the victim's house in order to lure the victim to come home.

At around 2:00 a.m. on September 22, the victim, Galindo,[1] and Mora left the bar and returned to the victim's home. Upon arriving home, the victim began yelling across the street at Appellant. Appellant and his stepfather, Sergio Armando de la Torre Pacheco, walked across the street to the victim's front yard. The five men got into a physical altercation, which resulted in Appellant stabbing the victim to death. The victim's blood was found near two trees in the victim's yard. Pacheco's blood was found near the curb.

Galindo testified that, after Appellant and Pacheco reached the victim's yard, Appellant appeared to punch the victim. Galindo only realized that the victim had been stabbed when the victim stated to Galindo that he had been stabbed by Appellant. Galindo did not see the victim strike Appellant, nor did he see any type of weapon in the victim's hands. Galindo next saw Mora hit Appellant and

---

[1]All references to "Galindo" are to the victim's cousin, Erbey Galindo.

Appellant run back across the street to his house. Meanwhile, Pacheco and Mora were arguing. Pacheco, Mora, and Galindo got into a physical altercation. Galindo did not have a weapon, but Mora was using either a rod or a stick to hit Pacheco. After being hit in the head, Pacheco left and returned to the house across the street.

Mora testified that, when Appellant and Pacheco entered the victim's yard, Appellant stabbed the victim. The victim was unarmed. Meanwhile, Pacheco rushed toward Mora with a beer bottle. Mora responded by hitting Pacheco with a shower curtain pole. Appellant began swinging the knife at Mora, and Mora hit Appellant with the pole. Appellant and Pacheco then left the scene.

Detective Charles Sims interviewed Appellant regarding the events of September 22. Detective Sims testified that Appellant did not tell him that the victim had a weapon. Appellant told Detective Sims that he was hit with a blunt object, but Appellant did not indicate who hit him.

Appellant testified in his own defense. On the evening of September 21, Appellant was at home drinking. Appellant and the victim were texting back and forth about drugs and money. Appellant testified that, when the victim arrived home, the victim began swinging a golf club and shouting at Appellant to come over to the victim's yard to fight. Appellant went inside his house to look for a flashlight, but could not find one. He then walked across the street to the victim's front yard with Pacheco. Galindo threw a beer bottle at Appellant and Pacheco. The victim and Mora both had golf clubs. The five men began arguing, and Mora hit Pacheco in the head with a golf club. While Appellant was attempting to help Pacheco, the victim hit Appellant in the back with a golf club. Appellant turned around and stabbed the victim. Mora then hit Appellant several more times. Appellant testified that he stabbed the victim because he felt that he was in danger and that, if he did not do something, he would be dead.

3

On cross-examination, Appellant testified that he gave Detective Sims a different version of events than those to which he testified at trial. Appellant agreed with the prosecuting attorney that Appellant stabbed the victim three times; that Pacheco was using an item that looked like a pipe, rather than a golf club; and that the victim was stabbed in the yard, rather than on the curb where Pacheco was hit. Appellant further testified that he did not know whether it was the victim or Mora who had initially hit him.

*Analysis*

In his first three issues, Appellant contends that the State's closing arguments to the jury were improper. We begin by noting that these complaints have not been preserved for appellate review. Generally, to preserve error for an improper jury argument, a defendant should (1) contemporaneously object to the statement, (2) request an instruction that the jury disregard the statement if the objection is sustained, and (3) move for a mistrial if the request for an instruction is granted. *Cooks v. State*, 844 S.W.2d 697, 727–28 (Tex. Crim. App. 1992). Thus, Appellant was required to object and proceed to an adverse ruling to preserve these issues for review on appeal. *Id.*; *see also Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (holding that the right to be free from incurable jury arguments may be waived by a "failure to insist upon it"). Appellant's trial counsel did not object to the allegedly improper remarks that his counsel on appeal is now challenging. Because Appellant did not object at trial to any of the arguments that he claims were improper, he has not preserved his first, second, or third issues for appellate review. *See* TEX. R. APP. P. 33.1(a); *Cockrell*, 933 S.W.2d at 89; *Cooks*, 844 S.W.2d at 727–28.

Moreover, we do not find that the prosecutor presented improper closing arguments. In Appellant's first issue, he contends that the State's closing arguments constituted improper bolstering because they vouched for the strength of the State's

4

case. Appellant complains of the following comments made by the prosecutor during closing arguments: (1) the "**believable** testimony you heard . . . prove to you that [the defendant's actions] were not immediately necessary" (emphasis added by Appellant); (2) there is "nobody in here to even . . . back up the Defendant's story"; (3) Appellant claimed self-defense "based on facts that clearly show that's not what happened"; and (4) "[t]his man is guilty."

In making closing arguments, a prosecutor may "strike hard blows," but not "foul ones." *Jordan v. State*, 646 S.W.2d 946, 948 (Tex. Crim. App. 1983). The law provides for, and presumes, a fair trial free from improper argument by the prosecuting attorney. *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Even when an argument exceeds the permissible bounds of these approved areas, it is not reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The remarks must have been a willful and calculated effort on the part of the State to deprive Appellant of a fair and impartial trial. *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)). We must "review the argument in the context of the entire argument and not in isolation." *Sennett v. State*, 406 S.W.3d 661, 670 (Tex. App.—Eastland 2013, no pet.).

During closing arguments, a prosecutor cannot vouch for the credibility of its own witnesses by giving unsworn testimony. *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981); *Hinojosa v. State*, 433 S.W.3d 742, 763 (Tex. App.—San Antonio 2014, pet. ref'd). However, a prosecuting attorney may make

arguments as to the truthfulness of a witness's testimony that are based on the evidence presented and reasonable deductions from that evidence. *Ramos v. State*, 419 S.W.2d 359, 368 (Tex. Crim. App. 1967); *Hinojosa*, 433 S.W.3d at 763.

We conclude that all four of these comments were either reasonable deductions from the evidence or answers to arguments made by opposing counsel. Appellant's claim of self-defense was based primarily on Appellant's testimony that he was attempting to protect Pacheco from being hit by Mora and that he was hit on the back by the victim with a golf club. However, Appellant's own testimony on cross-examination, the testimony of Galindo and Mora, and the physical evidence all contradict this version of events. On cross-examination, Appellant admitted that (1) he told Detective Sims a different version of events; (2) he was sending the victim inflammatory text messages in the hopes of luring the victim back to the victim's residence; (3) he did not know whether it was the victim or Mora who hit him; (4) Pacheco was hit with a pipe, not a golf club; and (5) Pacheco was hit near the curb, and the victim was stabbed next to two trees in the victim's yard. Mora and Galindo testified that the victim was not armed and that Appellant was the initial aggressor. The physical evidence suggests that the victim was stabbed in a different location from where Pacheco was hit. Pacheco's blood was found near the curb, while the victim's blood was found near two trees in the victim's yard. Based on this evidence, the prosecuting attorney made a reasonable deduction that Appellant's testimony was not credible and that Appellant was not acting in self-defense.

Further, Pacheco, the only other person who witnessed the altercation, did not testify. Therefore, the prosecuting attorney's statement that there was "nobody in here to . . . even back up the Defendant's story" was not improper. A prosecutor's comment on Appellant's failure to produce evidence other than his own testimony is proper. *See Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995). We overrule Appellant's first issue.

In his second issue, Appellant contends that the prosecuting attorney stated facts that were not in evidence when he stated that Appellant came across the street "with a knife out . . . by his side." "A prosecutor may not use closing arguments to present evidence that is outside the record." *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011). However, a prosecutor may comment on impressions or reasonable deductions made from the observation of evidence, so long as the jury has had an equal opportunity to make the same observation and "the chain of inferences stemming from such observation is [not] too long [nor] contains too many gaps." *Jordan*, 646 S.W.2d at 948. Here, there is no direct evidence that Appellant walked over to the victim's house with a knife out by his side. However, Appellant admitted to stabbing the victim with his own knife. Appellant testified that he was standing by his front door when the victim arrived home. Appellant then went inside his house and looked for a flashlight, but he could not find one. Appellant walked across the street to the victim's house where he had an altercation with the victim, which resulted in Appellant stabbing the victim to death. Based on Appellant's testimony, it is not an unreasonable inference that Appellant saw the victim arrive home, went inside to retrieve a knife, and then walked across the street to the victim's residence with a knife in hand. We conclude that the prosecutor's comments were not improper. We overrule Appellant's second issue.

In his third issue, Appellant contends that the prosecutor's comment that Appellant and Pacheco "ran like the thieves in the night that they were" was unfounded, defamatory, and improper. A prosecuting attorney should not refer to a defendant by any name other than his given name or nickname. *Duran v. State*, 356 S.W.2d 937, 938 (Tex. Crim. App. 1962); *Ponce v. State*, 299 S.W.3d 167, 175 (Tex. App.—Eastland 2009, no pet.). In order to be reversible error, the offensive comment must be "calculated to deprive the defendant of a fair and impartial trial." *Ponce*, 299 S.W.3d at 175 (quoting *Stein v. State*, 492 S.W.2d 548, 552 (Tex. Crim.

7

App. 1973)). In *Ponce*, we considered whether a prosecuting attorney's comment that the defendant was a "monster" was reversible error. *Id.* at 174. We held that, while the comment was not proper, it did not warrant reversal because the State only mentioned the word once, the mention of the word did not inject any new and harmful facts into the case, the State did not violate any mandatory provisions, and there was overwhelming evidence of the defendant's guilt. *Id.* at 175.

Similarly, the prosecutor in this case mentioned the word "thieves" only once. Moreover, while the use of the word arguably injected new facts (that Appellant committed theft), the State neither sought a conviction for theft nor asked the jury to assess punishment based on any extraneous offense related to theft. *See Casarez v. State*, 857 S.W.2d 779, 788 (Tex. App.—Fort Worth 1993), *aff'd on other grounds*, 913 S.W.2d 468 (Tex. Crim. App. 1995) (op. on reh'g) ("A comment allegedly referring to an extrinsic offense is not objectionable absent a specific request to punish for that extrinsic offense."). Therefore, we cannot say that the State's comment was "calculated to deprive [Appellant] of a fair and impartial trial" so that it affected Appellant's substantial rights. *See Ponce*, 299 S.W.3d at 175; *see also* TEX. R. APP. P. 44.2(b). We overrule Appellant's third issue.

In his fourth issue, Appellant contends that the trial court improperly allowed testimony concerning Appellant's out-of-court statements to Detective Sims. We review a trial court's ruling on admissibility of evidence for an abuse of discretion and will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). Appellant first argues that his statements to Detective Sims were admitted in violation of Article 38.22 of the Texas Code of Criminal Procedure. The State responds that Appellant's trial counsel did not preserve any complaints under Article 38.22 when he made a non-specific objection at trial that the State did not "follow the procedures set forth in 38.22." We agree.

8

The State relies on *Resendez v. State*, 306 S.W.3d 308 (Tex. Crim. App. 2009), in support of its contention. The issue in *Resendez* was whether the defendant's trial attorney had preserved for appellate review his claim that the defendant's statement was admitted in violation of Article 38.22 of the Code of Criminal Procedure. 306 S.W.3d at 313. In his motion to suppress, the defendant stated that his statements "were taken without the safeguards required by and in violation of Article 38.22." *Id.* In holding that this language was insufficient to preserve error, the Court of Criminal Appeals stated: "Article 38.22 contains a number of subsections that could have been applicable to the appellant's videotaped statement. The appellant's argument, however, contained little more than a citation to the statute and did not bring the specific violation of Article 38.22 to the trial court's attention." *Id.* (footnote omitted). As explained in *Resendez*:

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and [to] do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

Here, Appellant's trial attorney made the following objection to the introduction of Appellant's statements at trial: "And, Judge, I'm sorry. I hate to object, but I think under 38.22, if we're going to talk about a statement that the Defendant made while in custody, we have to follow the procedures set forth in 38.22." As in *Resendez*, Appellant merely cited the statute and did not specify which requirement of Article 38.22 he believed the State failed to comply with. Therefore, Appellant did not preserve his fourth issue for appellate review.

Moreover, it appears that the State established compliance with Article 38.22. The statute provides that an oral statement of the defendant is admissible if (1) an electronic recording is made of the oral statement; (2) before the statement, but during the recording, the defendant is given certain warnings; (3) the defendant knowingly, intelligently, and voluntarily waives the rights conveyed in the warnings; (4) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered; and (5) all voices on the recording are identified. TEX. CODE CRIM. PROC. ANN. art. 38.22, § (3)(a) (West Supp. 2016). Detective Sims testified that he interviewed Appellant, that this interview was recorded, that Appellant's *Miranda*[2] rights were read to him, and that Appellant waived those rights. Detective Sims further testified that the interview was recorded on a device capable of making an accurate recording, that he reviewed the recording, and that it was accurate and had not been altered. In his brief, Appellant does not point us to any deficiency in the State's authentication of Appellant's oral statements to Detective Sims, and we have found none.

Appellant also argues that "[a] defendant is entitled to have a jury decide about any issues raised concerning compliance [with Article 38.22]." Appellant cites *Aldaba v. State*, 382 S.W.3d 424 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd), in support of this proposition. "If an accused's statement was made as a result of custodial interrogation, when the issue is raised by the evidence, the accused is entitled to have the jury decide whether he was adequately warned of his rights and knowingly and intelligently waived those rights." 382 S.W.3d at 430 (citing *Oursbourn v. State*, 259 S.W.3d 159, 176 (Tex. Crim. App. 2008)); *see* CRIM. PROC. art. 38.22, § 7. As was the case in *Aldaba*, there was no factual dispute raised by the

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

evidence as contemplated by Article 38.22, section 7 that would require submission of an issue to the jury. We overrule Appellant's fourth issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


                        JOHN M. BAILEY

                        JUSTICE


December 22, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.