Joaquin H. RIOS, Appellant,

v.

The STATE of Texas, Appellee.

No. 53328.

Court of Criminal Appeals of Texas.

Oct. 19, 1977.

Appellant's Motion for Rehearing Denied Nov. 9, 1977.

C. Nick Rothe Jr., San Antonio, for appellant; Antonio G. Cantu, San Antonio, of counsel.

Ted Butler, Dist. Atty., Keith W. Burris and Susan D. Reed, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for delivery of a controlled substance. The jury found that appellant had two prior felony convictions, and the court accordingly assessed his punishment at life in the Texas Department of Corrections.[1]

The appellant contends that the trial judge erred by (1) permitting the details of an offense and extraneous offenses to be introduced during the penalty stage; (2) overruling his plea of former jeopardy; (3) allowing evidence of a prior conviction against one George De La Garza to be introduced against the appellant; and (4) allowing evidence of an extraneous offense to be introduced over objection. We affirm.

The testimony reflects that on March 25, 1974, Melvin Lee Jackson, a paid government informer, went to the office of the Federal Drug Enforcement Administration (DEA) in San Antonio. Based on information supplied by Jackson, Henry Brown, a detective with the San Antonio Police Department assigned to the DEA, drove with Jackson to the vicinity of Chestnut and Burnet Streets in San Antonio. Jackson and Brown there met Fernando Castillo. Castillo entered the car and the three men proceeded to the 200 block of Burnet. They stopped at 219 Burnet, and Castillo left the car and entered the residence at 219 Burnet. Jackson and Brown remained in the car. Castillo came back to the car and after a short discussion he re-entered the residence. Shortly thereafter, Castillo and the appellant left the residence and entered the car with Jackson and Brown.

Castillo introduced the appellant to Jackson and Brown. Brown and the appellant then discussed the possibility of a delivery of heroin. The appellant then discussed the possibility of a delivery of heroin. The appellant told Brown that he could provide heroin and that Brown should come back whenever he wanted to purchase heroin.

The following morning, at approximately 11:40 a. m., Brown talked with the appellant at 214 Burnet Street. They negotiated a price of $100, but the appellant told

1.  V.T.C.A., Penal Code, Section 12.42(d).

Brown the heroin would not be delivered by "his man" for an hour. Brown left and subsequently returned at approximately 1:00 p. m. At that time, the appellant told him to return in 45 minutes. At 1:45 p. m., Brown returned and the appellant gave Brown seven balloons containing a substance subsequently identified as heroin. Brown paid the appellant $100.

Officer Alfonso Alonzo, a San Antonio Police Department patrolman assigned to the DEA, testified that he and Agent Montoya of the San Antonio Police Department had Brown's car under surveillance on March 25 and 26, 1974. His testimony corroborated the testimony of Officer Brown.

We will initially consider appellant's second contention that the trial judge erred in overruling his plea of former jeopardy. The record reflects that on November 6, 1975, the appellant was put to trial on the merits of this case.

The testimony of that earlier trial is in this record. It reveals that during the direct examination of the first witness for the State the following occurred:

"Q  Okay. How, after this statement made by Fernando Castillo, without going into the conversation, what then occurred?

"A  Mr. Castillo re-entered the house at 214 Burnet, returned to the undercover vehicle accompanied by a subject introduced to me as Guero, subsequently identified as Joaquin H. Rios. And, both Mr. Castillo and Mr. Rios entered the undercover vehicle, and some discussion was held relative to the delivery of a quantity of heroin to me on that day, at that location.

"MR. ROTHE [DEFENSE COUNSEL]: Your Honor, I'm going to object to that and ask the jury to be instructed to disregard it as a direct violation of what counsel was instructed.

"THE COURT: Mr. Bailiff, take the jury.

"MR. PRYOR: Come with me, please.

  *    *    *    *    *    *

"WHEREUPON, after the jury was removed from the courtroom the following proceedings were had as follows:

"THE COURT: I'm curious as to why this testimony came out that way?

"MR. BURRIS [PROSECUTOR]: Your Honor, I—

"THE COURT: Why don't we get to what we heard.

"MR. BURRIS: Well, I don't know.

"THE COURT: You didn't tell him that we didn't want extraneous offenses testified to?

"MR. BURRIS: Agent Brown, what did I instruct you when I walked up to you a little while ago?

"AGENT BROWN: Well, the way I understood it, nothing was to be said relative to a narcotic buy on the 25th

"MR. BURRIS: That's what I told you?

"AGENT BROWN: The actual narcotic transaction itself.

"MR. BURRIS: Didn't I tell you that?

"AGENT BROWN: Yes. You did. And, I, at this point, didn't think this was not what was, you know, wanted by the Court.

"THE COURT: You didn't say that we discussed the narcotic buy on the 25th?

AGENT BROWN: Yes, sir. Well—okay.

"MR. ROTHE: Your Honor, if I might. My objection is—

"THE COURT: I apologize to you because I assumed he was going to say what we were going to have the next day. It was a shock to me that he was doing it just exactly the way I told the State's attorney to tell him not to do.

"MR. ROTHE: I'll move for a mistrial.

"THE COURT: I'll declare a mistrial. You may return to Federal Court. (To Agent Brown)

"AGENT BROWN: Thank you, Your Honor.

"THE COURT: Do you want a mistrial?

"MR. ROTHE: Yes, sir.

"THE COURT: Okay. That will be granted."

Prior to the trial of the instant case, the appellant filed a special plea alleging former jeopardy. See Vernon's Ann. C.C.P., Article 27.05. The plea stated that the trial judge, when he granted appellant's motion for mistrial, did not inquire whether the appellant *personally* wished to have a mistrial declared and that this failure by the trial judge precluded a second trial of the cause.

The issue, therefore, is whether the double jeopardy clause [2] will bar retrial where a motion for mistrial has been requested by defense counsel but the trial judge has not asked the defendant whether he personally wants a mistrial.

We have not previously addressed this specific issue, although we have addressed similar contentions. In *De Young v. State*, 160 Tex.Cr.R. 628, 274 S.W.2d 406, 407 (1954), the defendant asserted that the trial judge erred in overruling his special plea of former jeopardy. This special plea was based on a former trial that had resulted in a mistrial. The Court there stated:

> "This he [the trial judge] did in response to appellant's written motion for mistrial, and therefore the appellant, having specifically prayed for the action of the court about which he now seeks to complain, cannot successfully raise the question of former jeopardy. This we think is so fundamental as to not require the citation of authorities."

In *De Young*, however, the defendant did not raise the issue of whether the defendant's personal consent to his counsel's motion was required before a subsequent prosecution would be barred. See also *Abbott v. State*, 94 Tex.Cr.R. 31, 250 S.W. 188 (1923); *Vaccaro v. United States*, 360 F.2d 606 (5th Cir. 1966).

In *Speights v. State*, 499 S.W.2d 119 (Tex. Cr.App.1973), the trial court overruled a special plea of former jeopardy. The basis of the special plea was the entry of a mistrial in a former prosecution. The record of the case, however, reflects that although the defendant's counsel originally requested a mistrial, the trial judge asked the defendant whether he (the defendant) personally wanted the mistrial. The defendant, over the objection of his counsel, responded that he wanted the mistrial. This Court held that the inquiry by the trial court into the circumstances surrounding the defendant's consent and the defendant's actual consent to the entry of the mistrial in the former case barred his claim of double jeopardy.

In *Hipple v. State*, 80 Tex.Cr.R. 531, 191 S.W. 1150 (1917), the jury was discharged and the case continued upon the motion of the prosecutor. The defendant's counsel consented to this action. The defendant, however, stood mute and neither objected nor consented in person. Upon his retrial, the defendant filed a plea alleging former jeopardy. The trial court dismissed the plea. This Court held that the trial court erred in dismissing the plea of former jeopardy, that the consent of the defendant's counsel was not binding on the defendant, and that the defendant had not waived the right to assert his plea of former jeopardy.

These cases, however, are not dispositive of the issue. In *United States v. Dinitz*, 424 U.S. 600, 607, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976) the Supreme Court stated that:

> " . . . where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error."

In *United States v. Tateo*, 377 U.S. 463, 467, 84 S.Ct. 1587, 1590, 12 L.Ed.2d 448, (1964) the Court stated:

> "If Tateo had *requested* a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the government would not have been barred from retrying him." (Emphasis in original.)

---

**2.** We deal not only with the Fifth Amendment of the United States Constitution, but also with Article I, Sec. 14 of the Texas Constitution.

Neither *Tateo*, supra, nor *Dinitz*, supra, involved a similar fact situation.

The language in *Tateo* and *Dinitz*, however, is instructive when viewed in light of our decision on rehearing in *Landers v. State*, 550 S.W.2d 272 (Tex.Cr.App.1977).[3] In *Landers* we held that there is no constitutional right to hybrid representation. We there stated that:

"Chief Justice Burger, then Judge of the United States Court of Appeals for the District of Columbia, discussed the proper roles of the defendant and his counsel at the National Defender Conference in 1969:

'Answering the question "who controls the progress of a case—the defendant or his counsel?" Judge Burger had an emphatic response: "The defense lawyer!" The defendant has only three decisions to make, he pointed out. To plead guilty or not guilty; to have a jury or non-jury trial; and to take the stand or not.

'The ideal and goal, according to Judge Burger, is to establish a system in which the assigned defense counsel will be indistinguishable from the retained defense counsel in skill, as well as manners.' " (Citation omitted)

*Landers*, therefore, is consistent with our opinion in *Webb v. State*, 533 S.W.2d 780 (Tex.Cr.App.1970), where we reaffirmed the rule that a defendant does not have the right to be both represented by counsel and also propound his own questions to witnesses as well as make jury arguments in his own behalf.

█ It necessarily follows that the defendant need not be asked by the trial judge if he personally approves of the ac-

tion of his trial counsel in requesting a mistrial.

Moreover, it is entirely logical that the defendant impliedly consented to the waiver of his double jeopardy claim. *In United States v. Dinitz*, supra, the Supreme Court stated:

"This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right." *Id.*, at 609, n. 11, 96 S.Ct. at 1081. (Citations omitted)

Accord, *Andrews v. State*, 436 S.W.2d 546 (Tex.Cr.App.1969); *Whitehead v. State*, 162 Tex.Cr.R. 507, 286 S.W.2d 947 (1956).[4] Appellant's contention is overruled.

We will next consider appellant's fourth contention that the trial judge erred by allowing the State to introduce testimony of an extraneous offense. Specifically, this contention focuses upon the alleged offer by the appellant to sell Officer Brown heroin on March 25, 1974.

█ It is a well established proposition that where an offense is one continuous transaction, or another offense is part of the case on trial or closely interwoven with the case on trial, proof of all facts relating to the transaction or other offense is proper as part of the res gestae of the offense. *Spencer v. State*, 466 S.W.2d 749 (Tex.Cr.App.1971); *Jones v. State*, 505 S.W.2d 909 (Tex.Cr.App.1974) and cases cited in 23 Tex. Jur.2d, Evidence, Section 196, p. 302.

█ The alleged offer to sell, if indeed it was an offer to sell, would have constituted

---

**3.** Although this writer concurred in the results of the dissent in *Landers*, I am bound by this Court's holding in that case. *Landers*, however, is distinguishable from the present case. In *Landers*, we did not address the issue presented by this case. The issue here necessarily encompasses the question of the duty of the trial judge to inquire into decisions relating to tactical or strategic matters at trial. Neither the majority nor the dissent in *Landers* would require the trial judge to ascertain whether the defendant personally acquiesces in each and

every tactical or strategic decision of his defense attorney.

**4.** See also *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543, (1971), where the trial judge sua sponte ordered a new trial. The Court held that the mistrial was a bar to a subsequent prosecution. Mr. Justice Burger, however, noted in his concurring opinion that "[I]f the accused had brought about the erroneous ruling we would have a different case . . . .." *Id.*, at 488, 91 S.Ct. at 558.

an offense under Sec. 4.03(a) of the Controlled Substances Act.[5] We need not decide whether the appellant committed an extraneous offense on March 25, 1974, as the appellant's activity is res gestae of the offense. *Spencer v. State,* supra; *Jones v. State,* supra. Appellant's contention is overruled.

■ Appellant's third contention is that the trial judge erred in permitting evidence of a prior conviction against one George De La Garza to be introduced when the third enhancement paragraph alleged the same conviction against the appellant.

The appellant's contention, as we understand it, is that the third enhancement paragraph alleged that the *appellant,* in the District Court of Bexar County, Texas, in Cause No. 64423, had been convicted of the felony of theft of corporeal property over the value of $50.00, while the prison packet reflecting the felony conviction named George De La Garza, alias Joaquin Rios, as the person who was convicted of the felony.

The appellant does not complain that there is a variance between the allegations in the indictment and the proof [6] or that the evidence is insufficient to show that he was the same person convicted of the felony theft.[7] Rather, the appellant contests the admissibility of the evidence [8] to establish that the appellant was the same person convicted of the felony theft.[9]

It is well established that the State has the burden of proving that the appellant was the same person convicted of the felony theft. *Elizalde v. State,* 507 S.W.2d 749, 752 (Tex.Cr.App.1974). In *Cain v. State,* 468 S.W.2d 856, 859 (Tex.Cr.App.1971), we stated:

"This Court has approved several different means to prove the accused was the same person previously convicted. They include, but are not necessarily limited to: (1) Testimony of a witness who identifies the accused as the same person previously convicted. *Garcia v. State,* 135 Tex.Cr.R. 667, 122 S.W.2d 631; *Brumfield v. State,* Tex.Cr.App., 445 S.W.2d 732; (2) Introduction of certified copies of the judgment and sentence and records of the Texas Department of Corrections or a county jail including fingerprints of the defendant, supported by expert testimony identifying them as identical with known prints of the defendant. *Vessels v. State,* Tex.Cr.App., 432 S.W.2d 108; (3) And by stipulation or judicial admission of the defendant. *Brumfield v. State,* [Tex.Cr.App., 445 S.W.2d 732] supra."

Furthermore, we considered a similar contention in *Garza v. State,* 548 S.W.2d 55 (Tex.Cr.App.1977). There, the defendant contended that the evidence was insufficient to show that he was the same person convicted of a prior felony. As in the present case, the enhancement paragraph alleged the defendant's name, while the prison packet indicated that a person with a different name committed the prior felony.

In *Garza,* we held that the evidence was sufficient to show that the defendant was the same person who was convicted of the prior felony. The difference in the name alleged in the enhancement paragraph and the prison packet was irrelevant since the State proved that the defendant and the person named in the prison packet were the same.

---

5. Vernon's Rev.Civ.St., Article 4476–15, Section 4.03(a).

6. See Vernon's Ann. C.C.P., Article 21.07, which provides that when a person is known by two or more names an indictment is sufficient if it states either name.

7. The sufficiency of the evidence demonstrating that the appellant was the person who was convicted of the felony theft is not challenged.

8. The appellant objected to the introduction of the prison packet.

9. In order to prove that the appellant was in fact the person convicted of the felony theft in Cause No. 64423, the State called a fingerprint expert. He testified that fingerprints taken from the appellant during the trial matched those contained in the prison packet reflecting the conviction of George De La Garza in Cause No. 64423.

We therefore hold that *Garza*, supra, is controlling. The evidence was properly admitted and appellant's third contention is overruled.

We now consider appellant's first contention. The appellant contends that the trial judge erred in permitting the introduction, over objection, of details of offenses and extraneous offenses during the penalty stage of the trial. Specifically, the appellant objected to the introduction of State's Exhibit No. 9.[10]

State's Exhibit No. 9 does contain reference to two extraneous offenses. However, the record reflects that these extraneous offenses were final convictions. Moreover, the pen packets of the two extraneous offenses were properly admitted in evidence at trial. Cf. *Aaron v. State*, 546 S.W.2d 277 (Tex.Cr.App.1976); *Mullins v. State*, 492 S.W.2d 277 (Tex.Cr.App.1973).

The jury found both enhancement paragraphs true and assessed punishment at life. Under the provisions of V.T.C.A., Penal Code, Section 12.42(d), the mandatory sentence was life. We cannot perceive how the appellant could have been prejudiced. The error, if any, was therefore harmless beyond a reasonable doubt. *Burton v. State*, 493 S.W.2d 837 (Tex.Cr.App.1973); *Morrow v. State*, 500 S.W.2d 811 (Tex.Cr. App.1973). Appellant's contention is overruled.

Finding no reversible error, we affirm the conviction.

---

10.  State's Exhibit No. 9 is comprised of the pen packet and various other papers connected with Cause No. 66913, one of the two prior felony convictions relied upon by the State for enhancement.