Opinion filed June 8, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed June 8, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00185-CR 

                                                    __________

 

                                 PEDRO O. FUENTEZ, JR., Appellant 

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 385th District Court

 

                                                         Midland County, Texas

 

                                                 Trial
Court Cause No. CR29494

 



 

                                                                   O
P I N I O N

The jury convicted Pedro O. Fuentez, Jr. of two
counts of indecency with a child by contact. 
The jury then assessed a sentence of five years confinement and a fine
of $1,750 and recommended that Fuentez=s
confinement be suspended and that he be placed on community supervision.  The trial court suspended Fuentez=s confinement, placed him on community
supervision for ten years, and fined him $1,750.  We find no error and affirm.

 

 








                                                               Background
Facts

Fuentez, Elizabeth Sandoval, and Samantha Julie
Hernandez went to a dance at the Los Arcos Club in Odessa.  They started drinking before the dance and
continued drinking while at the dance. 
They left the dance around 2:00 a.m. and drove to Mark Reyes=s house in Midland.  Sandoval was dating Mark, and she and Hernandez
were planning on spending the night at his house.  Mark lived with his brother, Roman Reyes, his
ten-year-old daughter, V.R., and his son, I.R.

When Fuentez, Sandoval, and Hernandez got to the
house, other people were already there. 
Most of the adults, including Fuentez, were intoxicated.  Everyone had a few more drinks.  Sandoval and Mark eventually went to
bed.  Others left.  Hernandez laid down on a couch.  Fuentez told her that he was going to rent a
motel room.  Hernandez heard the front
door, and she went to sleep.  When Hernandez
woke up, she went to the bathroom.  She
saw V.R. come out of a bedroom crying and run into Roman=s
bedroom.  Hernandez heard V.R. tell Roman
that a man was touching her and kissing her. 
Hernandez then turned and saw Fuentez. 
He was nude except for his socks. 
Hernandez heard Fuentez say: ALet
me explain, let me explain.@  He also told Hernandez: AI thought it was you the whole time;
let me explain.@

V.R. testified that she and her younger brother
went to sleep that night in her father=s
bed.  When she woke up, she felt
something touching her Aprivate
parts.@  She knew that it was a man and that it was
not her father or uncle, but she did not know who the man was.  She also knew the man had no clothes on.  She went to her uncle=s
room and tried to wake him to tell him that someone was touching her in the
wrong places.

The police were summoned.  V.R. told one officer that a man had come
into her room and started touching her in places that made her
uncomfortable.  Fuentez was arrested, and
V.R. was taken to Midland Memorial Hospital for an examination.  Cori Elaine Armstead, the nurse manager in
the hospital=s
emergency room, examined V.R.  Armstead
testified that V.R. described being touched inappropriately by a man and that,
in her exam, she found physical evidence of sexual penetration.








Fuentez testified that everyone at Mark=s house was intoxicated.  He denied knowing any children were in the
house.  He testified that he needed
somewhere to pass out and that he went to the nearest bedroom.  It was dark in the bedroom, and he did not
see anyone in the bed.  He went to sleep
on top of the covers.  He denied
assaulting anyone and testified that he did not know there was a problem until
he woke up the next morning.

                                                                         Issues

Fuentez challenges his conviction and sentence
with four issues.  He alleges, initially,
that the trial court erred by granting his motion for mistrial and, second,
that his retrial constituted double jeopardy. 
Third, Fuentez contends that the trial court erred by assessing his
punishment beyond that recommended by the jury and, four, that the trial court
erred by not granting his motion for an instructed verdict of not guilty.

                                                                      Discussion

Was Fuentez Unconstitutionally Subjected to
Double Jeopardy?

Fuentez=s
case was originally called for trial in March 2005.  Fuentez had filed an application for
community supervision but did not file an election to have the jury assess
punishment.  A jury was selected and
sworn.  The trial court read the
indictment, and Fuentez pleaded not guilty. 
The State presented its opening statement.  Fuentez=s
counsel reserved his opening.

Following a break, the attorneys conferred with
the court outside the jury=s
presence.  Fuentez=s
attorney announced that he had made a Amajor
faux pas@ because
it had just come to his attention that he could not get community supervision
from the judge.  Fuentez=s attorney asked for a mistrial.  The prosecutor did not oppose this
request.  The trial court granted the
motion  and discharged the jury without
inquiring of Fuentez to determine if he agreed to waive his double jeopardy
rights by requesting a mistrial.

Fuentez=s
case was called for trial again in May. 
Fuentez elected to have the jury assess punishment.  The jury found Fuentez guilty of two counts
of indecency with a child by contact. 
The jury assessed his punishment at five years confinement and a fine of
$1,750.  The jury also found that Fuentez
had not been previously convicted of a felony and recommended that his
confinement C but not
his fine C be
suspended.  The trial court accepted the
jury=s recommendation
and suspended Fuentez=s
confinement for ten years.








Fuentez argues that, because he did not personally
agree to a mistrial and there was no manifest necessity for one, the subsequent
trial violated his constitutional right to be free from double jeopardy.  See generally Arizona v. Washington,
434 U.S. 497, 503 (1978)(State may not put a defendant in jeopardy twice for
the same offense); Ex parte Fierro, 79 S.W.3d 54, 56 (Tex. Crim. App.
2002)(after a jury has been impaneled and sworn, double jeopardy generally bars
a retrial if the jury is discharged without reaching a verdict).  There is no dispute that Fuentez=s counsel requested the mistrial.  Fuentez argues that this is immaterial
because a lawyer cannot give up his client=s
constitutional rights.  That statement is
true in some C but not
all C
instances.  

Fuentez relies on Boykin v. Alabama, 395
U.S. 238 (1969).  This was an appeal of a
death penalty sentence.  Boykin pleaded
guilty to the charged offenses.  The
trial court conducted a jury trial to assess punishment, and the jury returned
a death penalty verdict.  The Supreme
Court reversed the sentence because the trial court accepted the guilty plea
without inquiring of Boykin to insure that his guilty plea was intelligent and
voluntary.  Id. at 242.  

The Supreme Court did not adopt a blanket rule
that no constitutional right could be waived by counsel without the individual=s personal consent.  The court noted that a guilty plea is more
than an admission:  it is a
conviction.  Id. at 242-43.  A guilty plea necessarily implicates several
constitutional rights, such as the privilege against compulsory
self-incrimination, the right to trial by jury, and the right to confront one=s accusers.  Id. at 243. Consequently, a trial
court must determine from the defendant himself that a guilty plea is being
freely, knowingly, and voluntarily given before accepting it.

Later, in New York v. Hill, 528 U.S. 110
(2000), the court considered whether counsel could waive his client=s rights to a speedy trial under the
Interstate Agreement on Detainers.[1]  The court noted that, as a general rule, even
the most basic rights of criminal defendants are subject to waiver.  Id. at 114.[2]  Whether the defendant must participate
personally in the waiver and whether the defendant=s
choice must be informed or voluntary depend upon the right at stake.  Id.  









The court recognized that the right to counsel and
the right to plead not guilty cannot be waived by counsel without the fully
informed and publicly acknowledged consent of the defendant.  But, the attorney has the authority to manage
the conduct of the trial, and the client is often bound by his attorney=s decisions.  Id. at 114-15.  These would include decisions such as which
arguments to pursue, which evidentiary objections to raise, and what agreements
to conclude regarding the admission of evidence.  Id. at 115.  The court concluded that trial scheduling
fell within counsel=s area of
authority and that an attorney could waive his client=s
right to a speedy trial.  Id.

The Texas Court of Criminal Appeals has similarly
recognized that an attorney has some authority to waive his client=s constitutional rights.  In Rios v. State, 557 S.W.2d 87 (Tex.
Crim. App. 1977), the court held that a trial court could grant a defense
attorney=s motion
for mistrial without first obtaining the defendant=s
informed and voluntary consent.  Id.
at 91.  The court cited Judge Burger=s comments at the 1969 National Defense
Conference where he said that a defendant need make only three decisions: (1)
plead guilty or not; (2) have a jury trial or not; and (3) take the stand or
not.[3]  Id. 
To this list, one might also add: to have an attorney or not.  See Hill, 528 U.S. at 114.

The Rios opinion indicates that the court
was concerned, at least in part, with hybrid representation and the possibility
that trial courts would be required to see if the defendant personally
acquiesces in every tactical or strategic decision of his attorney.[4]
See Rios, 557 S.W.2d at 91 n.3.[5]  The Rios opinion remains good
law.  During oral argument, Fuentez=s counsel provided the court with a
copy of Torres v. State, 614 S.W.2d 436 (Tex. Crim. App. 1981), to
support his contention that the defendant=s
personal consent is required before a mistrial may be granted without giving
rise to double jeopardy concerns.  








In Torres, the trial court held a hearing
outside the jury=s
presence to determine if a witness had been intimidated into testifying
falsely.  At the end of the voir dire
examination, the trial court expressed its opinion that the witness had been
intimidated.  One of the defendant=s attorneys asked the trial court to
disclose what evidence it had of intimidation. 
That led to an exchange between the trial court and counsel, following
which the trial court asked defense counsel if they wanted a retrial.  One attorney indicated his desire that the
trial proceed.  The second stated that he
could not answer the court=s
question until after visiting with his client. 
The trial court proceeded to grant a mistrial without affording the
attorney an opportunity to confer with the defendant.  The court of criminal appeals held that,
under these circumstances, the defendant had not consented to a mistrial.  Id. at 442.

This holding does not require the defendant=s personal consent and is completely
consistent with the court=s
prior decision in Rios.  The court
found a lack of consent because neither of the defendant=s
attorneys said yes to the trial court=s
offer of a mistrial.  One affirmatively
declined the offer, and the second wanted an opportunity to visit with the
client.  Because the defendant=s attorneys did not agree to a
mistrial, it could not be said that the defendant had agreed to a mistrial.

The reasons why a defense counsel might request a
mistrial are numerous and may often require a quick decision and the benefit of
legal training and experience.  Counsel
may make many other decisions during the course of trial which implicate the
client=s
constitutional rights.  For example, if
counsel decides not to cross-examine a witness or to not object to potentially
hearsay evidence, the right of confrontation is implicated, and a defendant=s rights may be waived.          In
Hill, 528 U.S. at 110, the Supreme Court recognized that the attorney
must have some authority to conduct the trial. 
In Rios, 557 S.W.2d at 87, the court of criminal appeals
recognized that the administration of justice requires some reliance on the
attorney as the client=s
spokesman.  If we adopted Fuentez=s argument, anytime a defendant=s constitutional rights were
potentially implicated, the trial court would be required to excuse the jury
and verify the defendant=s
acquiescence in his attorney=s
decision.  Such a result is
impractical.  Furthermore, because this
does not involve one of the four basic decisions, Supreme Court authority
indicates the defendant must personally make, it is not constitutionally
required.[6]  Fuentez=s
first and second issues are overruled.

                                     Did
the Trial Court Exceed Its Authority By Placing 

                                        Fuentez
on Ten Years Community Supervision?








Fuentez argues in his third issue that the trial
court erred by placing him on ten years community supervision rather than
five.  Fuentez argues that the trial
court cannot exceed the jury=s
assessment and that, because it assessed his punishment at five years, the
trial court was bound by that determination. 
The State responds that, when the jury recommended community
supervision, the trial court was required to place Fuentez on community
supervision but that it retained the authority to impose any period of
supervision provided by Tex. Code Crim.
Proc. Ann. art. 42.12 (Vernon Supp. 2005).

Neither party has cited us to any authority
addressing this particular question.  A
plain reading of Article 42.12, however, supports the State=s position.  Article 42.12, section 4 provides in relevant
part:

(a) A jury that imposes confinement as punishment
for an offense may recommend to the judge that the judge suspend the imposition
of the sentence and place the defendant on community supervision.  A judge shall suspend the imposition of the
sentence and place the defendant on community supervision if the jury makes
that recommendation in the verdict.

 

(b) If the jury recommends to the judge that the
judge place the defendant on community supervision, the judge shall place the
defendant on community supervision for any period permitted under Section 3(b)
or 3(c) of this article, as appropriate. 


 

Because Fuentez faced felony charges, Article 42.12, section 3(b)
is applicable.  It provides that the
maximum period of community supervision is ten years.  The trial court=s
decision to impose a ten- year period of community supervision, thus, is within
the statutorily permitted period.

The State=s
position is also supported by recognition of the difference between the jury=s sentence and community
supervision.  Fuentez is correct that the
jury assessed his sentence at five years. 
But, their sentence was five years confinement.  The jury also recommended community
supervision.  This is defined by Article
42.12, section 2(2) as a suspension of his sentence.  Community supervision, therefore, is not part
of the sentence C it is an
arrangement in lieu of the sentence.  Speth
v. State, 6 S.W.3d 530, 532 (Tex. Crim. App. 1999).  We hold the trial court did not err when it
imposed a ten-year period of community supervision and overrule Fuentez=s third issue.

                                                        Sufficiency
of the Evidence








Fuentez contends in his fourth issue that the
trial court erred when it denied his motion for an instructed verdict at the
end of the State=s
case.  This presents a legal sufficiency
challenge.  Madden v. State, 799
S.W.2d 683, 686 (Tex. Crim. App. 1990). 
When conducting a legal sufficiency challenge, we view all the evidence
in the light most favorable to the verdict and determine whether any rational
trier of fact could find the essential elements of the crime beyond a
reasonable doubt.  Ross v. State,
133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

The relevant evidence has been previously
summarized in this opinion.  Fuentez
correctly notes in his brief that:

*  no
witness saw him with V.R.;

* V.R. could not identify him as the man who
touched her;

* V.R. was not positive it was a man who touched
her; 

* there was no evidence that he laid on the same
bed V.R. occupied; and

* he did not admit to touching V.R.

There was, however, evidence that V.R. was sexually
violated.  The jury heard her testimony
that she woke up when some man started touching her private parts.  She gave the same story to her uncle, the
police, health care providers, and the jury.   
The hospital=s
examination confirmed that V.R. had sustained sexual penetration.  Fuentez was indisputably in the house at the
time of V.R.=s outcry
and, by his admission, was sleeping in a bed in that house.  By a process of elimination, the only bedroom
he could have been in was the same one V.R. was sleeping in.  Most importantly, the jury heard testimony
that, immediately after V.R.=s
outcry, Fuentez was dressed only in a pair of socks and was trying to convince
Hernandez that he had an explanation and that he thought it was Hernandez the
whole time.

Even if this is characterized as circumstantial
evidence, the standard of review is the same.  
Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App.
1999).  Considering this evidence in the
light most favorable to the verdict, a rational fact-finder could have found
the essential elements of indecency with a child by contact beyond a reasonable
doubt.  

Fuentez=s
brief also includes a discussion of the factual sufficiency of the
evidence.  When conducting a factual
sufficiency review, we view all of the evidence in a neutral light, favoring
neither party.  Zuniga v. State,
144 S.W.3d 477, 481 (Tex. Crim. App. 2004). 
The only question to be answered in a factual sufficiency review is
whether, considering the evidence in a neutral light, the fact-finder was
rationally justified in finding guilty beyond a reasonable doubt.  Id. at 484.








The only additional evidence relevant to a factual
sufficiency review is Fuentez=s
testimony.  Fuentez denied any
wrongdoing.  He testified that he did not
know any children were in the house but that he needed to pass out and went to
the nearest bedroom.  He testified that
he did not see anyone on the bed and that he was unaware of any problem until
the next morning.

The jury was responsible for resolving any
conflicts in the testimony and, as such, is the sole judge of the weight and
credibility of the evidence.  Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Because there was conflicting evidence, we
may not sustain a factual sufficiency challenge unless the contrary evidence is
so strong that guilt cannot be proven beyond a reasonable doubt.  Zuniga, 144 S.W.3d at 484-85.  Fuentez=s
testimony is insufficient to sustain this burden on appeal.  The evidence is factually sufficient to
sustain the jury=s
verdict; and, therefore, Fuentez=s
fourth issue is overruled.

                                                                        Holding

The judgment of the trial court is affirmed.

 

RICK STRANGE

JUSTICE

June 8, 2006

Publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.

 











[1]Tex. Code Crim. Proc. Ann. art. 51.14 (Vernon 1979).





[2]Federal courts have, for example, held that the failure
to lodge a contemporaneous objection at trial is a procedural bar to subsequent
habeas corpus proceedings alleging constitutional violations.  See Cardenas v. Dretke, 405 F.3d 244,
249 (5th Cir. 2005), petition for cert. filed, (U.S. July 12, 2005) (No.
05-5304) (failure to object to potential juror=s
exclusion); Rowell v. Dretke, 398 F.3d 370, 375 (5th Cir.), cert.
denied, 126 S.Ct. 103 (2005) (failure to object to trial court=s refusal to define Asociety@ for jury); Hogue v. Johnson, 131 F.3d 466, 492
(5th Cir. 1997)(failure to object to evidence of allegedly void conviction). 





[3]Warren Earl Burger served as Chief Justice of the
United States Supreme Court from 1969 to 1986.





[4]There is no constitutional right to hybrid
representation.  Myers v. Johnson,
76 F.3d 1330, 1335 (5th Cir. 1996).





[5]See also Richardson v. State, 666 S.W.2d 336, 339 (Tex. App.CHouston [1st Dist.] 1984, no writ)(trial court was not
required to obtain defendant=s personal consent before granting defense counsel=s motion for mistrial because of deadlocked jury). 





[6]Fuentez=s counsel also provided the court with legal authority
concerning the steps necessary to accept a guilty plea.  The Supreme Court=s decisions in Boykin, 395 U.S. at 238, and Hill,
528 U.S. at 110, make clear that some decisions are subject to stricter
judicial review and that the decision to plead guilty, because of its
consequence, falls within this protected area.